# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
Case No. 25-CR-00256-JMB-EMB

UNITED STATES OF AMERICA,

                Plaintiff,

vs.

AMIIR MAWLID ALI,

                Defendant.

**DEFENDANT'S TRIAL BRIEF**

## INTRODUCTION

The Defendant, Amiir Mawlid Ali, through undersigned counsel, Eric J. Nelson and Julia A. Forbes, Halberg Criminal Defense, submits this trial brief and response to the Government's motions *in limine* in advance of the trial scheduled to begin on April 13, 2026. The evidence presented at trial will demonstrate that Mr. Ali did not knowingly possess a machinegun, and that the Government's case relies upon a flawed, pretextual investigation, inadmissible hearsay, and an overzealous attempt to attribute constructive possession of a shared space entirely to Mr. Ali while ignoring another viable suspect. Further, the Court should reject the Government's sweeping motions *in limine* because they infringe upon Mr. Ali's Sixth Amendment right to present a complete defense, and the Court should grant

the Defense's motion to exclude Rule 404(b) evidence. The Defense estimates that presentation of its case-in-chief will require less than one day.

## FACTUAL BACKGROUND

The Government's narrative relies on a sanitized version of the events of June 3, 2025. Minneapolis Police Department Officers Mohamud Jama and Matthew Olson were working a focused enforcement detail specifically tasked with locating illegal guns, not a standard traffic detail. When they stopped the silver sedan in which Mr. Ali was a passenger, they never once discussed the alleged reasons for the stop, which they later claimed were a failure to make a complete stop and aggressive acceleration. At no point did the officers mention a traffic citation or even begin to write a warning. Instead, within thirty seconds of approaching the vehicle, Officer Jama demanded identification from all occupants and immediately asked if there were weapons in the car. The officers utilized the traffic stop as a pretextual fishing expedition for weapons.

The Government heavily relied on Officer Jama's sworn assertion that he recognized Mr. Ali as a gang member immediately upon approaching the vehicle. The body-worn camera footage directly contradicts this claim. The BWC footage demonstrates that Officer Jama had no idea who Mr. Ali was at the inception of the stop. Officer Jama had to ask Mr. Ali for his name and date of birth multiple times, eventually yelling from the squad car to Officer Olson to ask for Mr. Ali's name and

middle name again because he could not remember the information. It took more than eight minutes into the interaction for officers to finally identify him.

Further, the Government alleges Mr. Ali made suspicious, evasive movements toward a pair of shoes on the floorboard. The video evidence will clearly show that Mr. Ali was simply looking down at his cellular phone, which he was holding in his hands during the interaction. The video from the scene also reveals a pair of dress shoes on the floorboard of the front passenger seat, which perfectly corroborates what officers had already been told by the occupants: they were on their way to the driver's high school graduation.

When officers unlawfully expanded the stop and searched the vehicle, Officer Jama located a firearm beneath the passenger seat. Crucially, the firearm was situated between Mr. Ali and the backseat passenger. Both Mr. Ali and the backseat passenger explicitly denied that the firearm belonged to them. Despite this shared proximity to the weapon and the fact that a mixture of DNA belonging to five or more people was later found on the firearm, the officers permitted the backseat passenger to leave the scene. The backseat passenger was not arrested, his phone was not seized, and law enforcement never took a sample of his DNA. Mr. Ali was the sole individual targeted and arrested due to the officers' unfounded hunches.

## **LEGAL ISSUES**

I.    **The factual circumstances of the traffic stop are highly relevant to the jury's determination of constructive possession and officer credibility, requiring the denial of the Government's motions to preclude this evidence (Motions 1, 6, and 7).**

The Government's first and seventh motions in limine seek to preclude the defense from relitigating pre-trial suppression issues and referencing law enforcement practices. While the defense acknowledges that the legal constitutionality of the traffic stop is a matter already decided by the Court, the factual circumstances surrounding the initiation and execution of that stop remain highly relevant at trial. The Sixth Amendment Confrontation Clause guarantees criminal defendants the opportunity for effective cross-examination to expose a witness's motivation or potential bias. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). The jury is entitled to hear that officers bypassed any investigation of the alleged traffic infractions to immediately conduct a pretextual weapons investigation. This context is essential for the jury to accurately assess the thoroughness of the officers' methods, their credibility, and their potential biases in specifically targeting Mr. Ali.

Further, the Government's sixth motion seeks to preclude evidence regarding the decision not to charge the other occupants of the vehicle. Because the Government relies on a theory of constructive possession in a jointly occupied space, the officers' failure to investigate, interview, or collect DNA from the proximate

4

backseat passenger directly undermines the Government's claim that Mr. Ali exercised exclusive dominion and control over the hidden weapon. The Eighth Circuit has consistently recognized the relevance and admissibility of evidence that provides necessary context for specific law enforcement actions, investigations, and charging decisions in a particular case. *United States v. Finley*, 56 F.4th 1159, 1165 (8th Cir. 2023). Precluding this essential factual context would improperly shield the investigating officers from legitimate cross-examination and directly violate Mr. Ali's constitutional right to present a complete defense under the Sixth Amendment. *Van Arsdall*, 475 U.S. at 679.

II.   **The Government's proposed body-worn camera footage and squad car audio contain inadmissible hearsay that cannot be admitted under the present sense impression or effect on the listener exceptions.**

The Government seeks to introduce body-worn camera and squad car footage under the theory that the officers' recorded statements are admissible as present sense impressions. The present-sense impression exception requires substantial contemporaneity to minimize unreliability due to defective recollection or conscious fabrication. *United States v. Manfre*, 368 F.3d 832, 840 (8th Cir. 2004). Officer statements identifying complex items, narrating their investigative process, or speculating about the occupants' movements require professional reflection and subjective interpretation, destroying the spontaneity required by Federal Rule of Evidence 803(1).

The Government further attempts to introduce the passengers' out-of-court statements by claiming they are not offered for their truth, but merely to show their effect on the investigating officers. This rationale is often used as an impermissible backdoor for hearsay, and the Eighth Circuit has explicitly warned that such justifications are impossibly overbroad when used to circumvent hearsay rules. *United States v. Holmes*, 620 F.3d 836, 841 (8th Cir. 2010). Any passenger statements containing factual assertions must also be excluded to protect Mr. Ali's confrontation rights under the Sixth Amendment.

**III.    The Government's motions to exclude character evidence and charging decisions must be denied because such evidence is directly relevant to the essential elements of knowledge and constructive possession (Motions 4 and 6).**

The Government's attempt to preclude evidence of charging decisions (Motion 6) and character evidence (Motion 4) must be rejected because such evidence is necessary to defend against the core elements the Government must prove beyond a reasonable doubt.

First, to secure a conviction under 18 U.S.C. § 922(o), the Government must prove beyond a reasonable doubt that Mr. Ali knew the firearm possessed the specific physical characteristics that brought it within the statutory definition of a machinegun under 18 U.S.C. § 922(o). In *Staples v. United States*, 511 U.S. 600, 619 (1994), the Supreme Court held that the Government is required to prove the defendant's knowledge of the features that make the weapon a machinegun because

dispensing with a *mens rea* requirement would risk criminalizing the "traditionally lawful conduct" of gun ownership. The Eighth Circuit has further clarified that this burden persists in all cases involving the unlawful possession of unregistered firearms; the prosecution must prove the defendant knew of the physical characteristics that bring the weapon "within the ambit of the Act." *United States v. White*, 863 F.3d 784, 791 (8th Cir. 2017).

This knowledge requirement is specifically designed to protect "law-abiding, well-intentioned citizens" from liability for possessing firearms that have been secretly or internally modified, as such weapons "may give no externally visible indication that it is fully automatic." *Staples*, 511 U.S. at 611, 615. In this case, the weapon was hidden beneath a passenger seat, and Mr. Ali explicitly denied knowledge of its presence or its automatic capabilities. There is no evidence—such as statements of familiarity or observations of the defendant handling the weapon— to suggest Mr. Ali was aware of any internal modifications. Consequently, evidence of Mr. Ali's law-abiding character is highly probative of whether he would knowingly possess such a device, making the Government's attempt to exclude such evidence under Motion 4 a direct infringement on his right to present a complete defense.

Second, the Government must establish constructive possession by showing the defendant knowingly had the power and intention to exercise dominion and

control over the firearm. *United States v. Walker*, 393 F.3d 842, 846 (8th Cir. 2005). The Government cannot meet its burden of proving constructive possession because it has failed to establish an "additional nexus" between Mr. Ali and the firearm beyond his mere physical proximity in a jointly occupied vehicle. *United States v. Howard*, 977 F.3d 671, 676 (8th Cir. 2020). To establish constructive possession, the Government must prove the defendant knowingly had both the power and the intention at a given time to exercise dominion or control over the firearm. *United States v. Walker*, 393 F.3d 842, 846 (8th Cir. 2005). In cases where contraband is found in a jointly occupied space, such as a vehicle with multiple passengers, the Eighth Circuit has explicitly held that dominion over the premises alone is insufficient; there must be additional evidence linking the defendant specifically to the contraband. *United States v. Johnson*, 18 F.3d 641, 647 (8th Cir. 1994).

In this instance, the weapon was not in Mr. Ali's exclusive control; it was located in a shared space beneath a seat, positioned between Mr. Ali and another passenger. Unlike cases where a defendant's ownership of the vehicle or exclusive access to the area provides a sufficient link, Mr. Ali was a mere passenger with no property interest in the sedan. *United States v. Long*, 843 F.3d 338, 341 (8th Cir. 2016). The presence of a DNA mixture from five or more individuals on the firearm further negates any inference of exclusive or primary control by Mr. Ali.

8

Because the evidence equally supports a theory of possession by the other proximate passenger—whom law enforcement chose to release without investigation—the Government cannot establish the necessary nexus to Mr. Ali beyond a reasonable doubt. Therefore, the factual context regarding the presence and release of the other occupants is legally essential to rebut the Government's theory of possession, necessitating the denial of Motion 6. *United States v. Brandon*, 521 F.3d 1019, 1026 (8th Cir. 2008).

IV.   **The Court must deny the Government's remaining motions *in limine* because they infringe upon the Sixth Amendment and the Federal Rules of Evidence.**

The Government improperly seeks to preemptively exclude Mr. Ali's squad car statements to police. (Motion 3). If the Government introduces portions of the squad car video or police testimony to demonstrate consciousness of guilt, the rule of completeness under Federal Rule of Evidence 106 dictates that Mr. Ali must be permitted to introduce his contemporaneous denials to provide accurate context and prevent the jury from being misled. *United States v. Ramos-Caraballo*, 375 F.3d 797, 802 (8th Cir. 2004).

Additionally, the Government's attempt to exclude all character evidence. (Motion 4) ignores Federal Rule of Evidence 404(a)(2)(A), which expressly permits a criminal defendant to offer evidence of a pertinent character trait. Mr. Ali's law-abiding character is highly probative of whether he would knowingly possess a

9

machinegun conversion device. The Supreme Court has long recognized that such character evidence, standing alone, may be sufficient to generate a reasonable doubt of guilt. *Michelson v. United States*, 335 U.S. 469, 476 (1948); *United States v. Monteleone*, 77 F.3d 1086, 1089 (8th Cir. 1996).

The Government further requests a pretrial ruling that two jail calls are admissible as self-authenticating records (Motion 5). Certifying a record as a business record does not cure the inadmissible hearsay statements made by the defendant or other individuals on those calls, nor does it circumvent the required balancing test under Federal Rule of Evidence 403. *United States v. Ruzicka*, 988 F.3d 997, 1007 (8th Cir. 2021). The probative value of these calls is substantially outweighed by the danger of unfair prejudice, and blanket admissibility is inappropriate without addressing the specific foundational requirements for the recording systems and the context of the statements at trial. *United States v. LeBeau*, 867 F.3d 960, 970 (8th Cir. 2017).

V.   **The Defense's Rule 404(b) motion properly places the burden of establishing admissibility on the Government.**

Finally, the Government incorrectly characterizes the Defense's motion to exclude Rule 404(b) evidence as deficient, fundamentally misapprehending the burden of proof. It is not the defendant's burden to preemptively identify and exclude specific prior acts that the Government has not yet definitively sought to introduce; rather, it is the Government's affirmative burden to demonstrate the admissibility of

10

such evidence. District courts within the Eighth Circuit strictly require the Government to specify the particular purpose for offering any evidence of prior bad acts, rather than permitting the prosecution to simply list the permissible uses under the rule. *See United States v. Ivers*, Not Reported in Fed. Supp., 2018 WL 11025541, at *4–*5 (D. Minn. Jun. 26, 2018). Furthermore, before any such evidence may be admitted, the Government must establish that it satisfies a rigorous four-part test: (1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value under Rule 403. *United States v. Brandon*, 64 F.4th 1009, 1014 (8th Cir. 2023). The Eighth Circuit has consistently rejected a "laundry list" approach to Rule 404(b), mandating that the Government articulate a specific, non-propensity evidentiary chain connecting the prior act to the charged offense. *United States v. Mothershed*, 859 F.2d 585, 589 (8th Cir. 1988). Because the Government has not yet met this burden, the Defense's motion to require the Government to establish admissibility prior to the introduction of any such evidence is proper and must be granted.

## CONCLUSION

For the foregoing reasons, Defendant Amiir Mawlid Ali requests that the Court hold the Government to its high burden of proof, strictly enforce the rules against hearsay regarding the body-worn camera footage, and allow the defense to present the full

11

factual context of the officers' flawed investigation.

Respectfully submitted,

**HALBERG CRIMINAL DEFENSE**

Dated: March 23, 2026

*/s/ Eric J. Nelson*
Eric J. Nelson
Attorney No. 308808
Attorney for Defendant
7900 Xerxes Avenue South
Suite 1700
Bloomington, MN 55431
(612) 333-3673

Dated: March 23, 2026

*/s/ Julia A. Forbes*
Julia A. Forbes
Attorney No. 392853
Attorney for Defendant
7900 Xerxes Avenue South
Suite 1700
Bloomington, MN  55431
(612) 333-3673

12